Nash, C. J.
 

 Frederick Johnson, Sen., died in the month of March, 1819', having made a last will and testament, in which he gave the whole of his property to his wife and his two daughters, Mary and Sally, the one now the wife of Frederick Bryan, and the other of Hilen Godley, now dead. His will was made
 
 *218
 
 in June, 1818, At the time of his death, his wife was pregnant, and'subsequently gave birth to the plaintiff. The bill is filed for an account of the estate, and for a distributive share of the personalty, and for a conveyance of one-third of the realty. In 1803, the Legislature passed an act to authorize after-born children to receive' their due proportion of the estate of their father, when he lias'made no provision for them in his will. The defendants, in their answers, deny that the plaintiff is the child of the testator, Frederick Johnson, and aver that he is a bastard, and the son of Stephen Chapman. It is shown by the evidence, that the testator and his wife lived together in the same house for many years, and up to the time of the death of the former. By presumption of law, then, the plaintiff is his son, being born within two months after his death. The conception took place while the parties were married, and while they lived together ; and the rule is now well settled, that where there is opportunity for sexual intercourse between a man and his wife, it is presumed it did take place, unless the contrary be shown, provided there be issue ; and if the intercourse might have' occurred at a time when, by the course of nature, the husband might have been the father, the child is deemed his.
 
 Morris
 
 v.
 
 Davis,
 
 3 Car.
 
 &
 
 Pay., 215, 278.
 
 State
 
 v.
 
 Herman,
 
 13, Ire. 502. The only evidence upon which the defendants rely to prove the plaintiff to be illegitimate, consists of the declarations of Frederick Johnson to his wife. This evidence is not competent. Mr. Greenleaf, 2 vol. s. 151, says, the husband and wife are alike incompetent to prove the fact of non-access while they lived together, nor are the declarations of either competent to prove the illegitimacy, though tire child was bom three months after marriage, and therefore they had separated by mutual consent.
 
 Bowles
 
 v.
 
 Bingham, 2
 
 Munf. R. 442.
 
 Lee’s
 
 case, 8 East. 193.
 
 State
 
 v. Wilson, 10 Ire. 131. If there be access, nothing but impotence will bastardize the issue.
 
 State
 
 v.
 
 Goode,
 
 10 Ire. 49,
 
 Commonwealth
 
 v.
 
 Shepard,
 
 6 Binney, 283. Under the evidence irt this case we are bound to declare that the plaintiff is, in law* the son of Frederick Johnson, Sen., the testator.
 

 The defendant, Bryan, says he has been in possession of the negroes set forth in his answer* as his share in right of his wife
 
 *219
 
 under the will of said testator, claiming them as his own property, adversely to all the world, for more than three years ; and he claims the benefit of the Act of 1820, as if specially pleaded. There is no saving in that statute expressly for any one, but it perfects only such possession of slaves as would have barred an action to recover them, under the Statute of Limitations'; The expression in the statute is, such person having such possession
 
 “
 
 shall be deemed and held to have a good and absolute title to “ such slave or slaves,
 
 against all persons
 
 whose claim is barred “by said statute.” In the preceding part of the section, it tells us what possession it intends to ripen, and to what it refers in the clause recited, to wit, a possession which will sustain an action to recover the slaves. This Act of 1820 constitutes .the 18th section of the Act of 1836, ch. 65. The 3rd section points out the time within which actions at law shall be brought; but both Acts apply to actions at law and legal rights, and have no bearing on this case. The Act of 1836, ch. 122, which in the 16th section secures to a child, born after the making of the parent’s will, a due portion of the estate, when he is not provided for in the will, directs that the infant “ may, at any time within two years after the probate of the will, by his next friend or guardian, file a petition, &c.;” and the 22nd section provides that should no petition be filed within two years, as prescribed for by this Act, it shall be the duty of the executor, or administrator with the will annexed, before he shall pay or deliver the legacies in said will, &c., to call upon the said legatees or devisees, &c., by a bill or petition, &c., to litigate their respective rights, &c.” By this section there is no time within which this bill or ■ petition for an interpleader is limited, when brought by the executor, and by its equity it must extend to a bill filed by the child for the same purpose. The object of the petition or bill, directed to be filed by the executor, is to settle the estate and to ascertain and settle the respective rights of the parties. This bill is pretty much for the same purpose ; nor does any presumption of payment or abandonment arise under the Act of 1826. See Eev. Stat. 1836, ch. 65, sec. 14. The plaintiff came of age in May, 1840, and the bill was filed in 1846 — six years after any legal payment * could have been made to him, or the presumption of an abandonment com
 
 *220
 
 menced. Where equity acts in analogy to the common law, time is no bar of itself, but it may furnish evidence of payment, satisfaction or abandonment; but this can have no such effect under ten years after the action ought to have been brought. There is, therefore, no statutory bar to the plaintiff’s recovery, nor does any presumption arise against him.
 

 Church Chapman, one of the defendants, alleges that he has purchased from the other defendants, Frederick Bryan and wife, and said Godley and wife, for a valuable consideration, and which has been paid, all their interest in the estate of the said testator, and that he had no notice of the plaintiff’s claim at the time he made his purchase ; and that, therefore, he is a
 
 bona fide
 
 purchaser, without notice. These purchases were made by him in 1835 and 1837. In a subsequent part of his answer lie states that
 
 “
 
 from the death of the testator, Frederick Johnson, up to a short time before the filing of the bill, it was notoriously and openly admitted by him (the plantiff) &c., that he was the child of Stephen Chapipan, and not of the testator, and that his father, Stephen Chapman refused and objected to any claim being made by the defendant, David Chapman, on account of the plaintiff &e. This is a clear admission, not only that the claim of the plaintiff was notorious, but also satisfactory evidence that he, the defendant, Church knew it. It is also stated as a proof that the plaintiff knew he had no legal claim, that he sold his interest in 1842, to one Farnifold Chapman for thirty dollars, who since the filing of the bill, to wit, in 1847, sold it to Frederick Bryan, one of ’the defendants. These statements satisfy the Court that the whole of this business was a combination on the part of the defendants to -avail themselves of the destitute state of the plaintiff, and his ignorance, to secure to themselves, whatever interest he might have in the estate of Frederick Johnson, Sen. The most charitable construction that can be put on the answer is, that they did, in truth, believe that the plaintiff was illegitimate, and therefore not entitled to an interest in Frederick Johnson’s estate ; but that they knew of bis claim, there can be no question.
 

 This sale in 1842 by the plaintiff, is relied upon by the defendants as a bar to his recovery. It cannot have that effect. The pri.ee is so' totally inadequate, and the circitmstances under which
 
 *221
 
 it was made so suspicious, that a Court of Equity -will not enforce it as a bar to the plaintiff’s claim.
 

 The defendant, Church Chapman, relies also upon Iris long possession as barring the plaintiff’s claim. The same answer applies to his defence on that ground, as has already been given to that .of the other defendants : — being a purchaser with notice, he purchased subject to the claim of the plaintiff.
 

 The answer of Henry Harding, administrator of Hilen Godley, admits that he has in his hands, of the estate of his intestate, five negroes, who came to him as such administrator from the estate of the father of Hilen Godley ; that he administered in 1836, and advertised according to law. The assets of Godley are still in his hands, and they are not protected by the statutes of ’15 and ’91, from the claim of the plaintiff to an account of the assets of Frederick Johnson, Sen., or of his intestate, which came to his hands.
 

 There must be a decree for the plaintiff, and a reference to the Master of this Court, to take an account of the estate of Frederick Johnson, Sen., as prayed.
 

 Per Curiam. Decree accordingly.